GEDDES v. HUTCHINSON.

1. DECREE—CORRECTION.—A statement in the Circuit decree, not sustained by the facts, corrected, but held to be immaterial.

2. FINDINGS OF FACT by the Circuit Judge from written evidence, supported by testimony, approved.

3. EVIDENCE—ACCOUNTING.—Where an account between an agent and his *principals was taken down by an attorney. when the transactions were* recent, and agreed to by both parties, such statement may be received as evidence of a proper accounting in action tried several years afterwards when some of the parties are dead.

4. GENERAL EXCEPTIONS.—An exception alleging error "in assuming arbitrary amounts and figures from the face of the accounts, without ordering those accounts vouched or examined," is too general for consideration, and, in this case, was not sustained by the record.

5. AN EXCEPTION based upon a misconception overruled.

6. TRUST—ACQUIESCENCE.—Where one purchases land as agent for himself and others, takes deed to himself, declares the trust under which he holds, and the several parties take possession of their respective shares, the agent will not be deprived of his proportionate number of acres, because that

they include the dwelling house, where his holding has been acquiesced in for nineteen years.

7. IBID.—IBID.—PURCHASE BY STRANGERS.—Nor. in such case, and after knowledge and long acquiescence by all parties in interest, will the court disturb the purchases of three persons, not parties to the trust, who paid their money for their lots and took possession, and such money was used in part payment of the purchase of the entire tract.

8. COSTS IN EQUITY are within the discretion of the chancellor.

Before KERSHAW, J., Charleston, March, 1892.

This was an action commenced in 1880 by Toney Geddes and fourteen others against James Hutchinson and ten others, some of whom joined in the prayer of the complaint. Before the testimony had all been taken by the master, James Hutchinson and several others died, and the cause was revived by supplemental complaint.

*Messrs. Arthur Mazyck* and *Jervey & Prioleau*, for appellants.

*Messrs. A. M. Lee* and *Mordecai & Gadsden*, contra.

February 23, 1894. The opinion of the court was delivered by

MR. JUSTICE POPE. Some time in the fall of the year 1874, James Hutchinson began a negotiation with George W. Witte for the purchase of a plantation of land on Edisto Island, in Charleston County, in this State, known as the Clark or "Shell House," containing 404.26 acres. He employed Mr. A. T. Smythe, of the Charleston bar, to investigate the title. In April, 1875, the said Witte executed a deed of conveyance unto the said Hutchinson therefor, in consideration of $2,500. Of the consideration, $1,250 was paid in cash, and the remaining $1,250 was secured by Hutchinson's bond, together with a mortgage of the land. Interest on this bond ran from 1st January, 1875, at ten per cent. per annum. This deed and mortgage were promptly and properly recorded. On the same day the deed from Witte to Hutchinson was executed, Hutchinson executed a deed of trust whose recitals declared that he had purchased and taken title to the land in his own name, but that really he had purchased and held title for himself and

certain associates, and by this deed he bound himself, &c., to execute title to such of the land to his associates—all of whom were named in the deed, and the shares of each one distinctly specified—so soon as the balance of the purchase money was paid to Mr. Witte.    This deed was also properly recorded.

In December, 1876, two of the parties named in the trust deed went to the law office of Mr. Smythe and complained of the conduct of Hutchinson, claiming that he had told them he gave $3,500 for the land, and had required them to pay at the rate of $11 per acre; whereas, in fact, he had only paid Witte at the rate of $6 or $7 per acre.    Very properly, Mr. Smythe declined to discuss the matter with them in the absence of the other parties to the transaction.    The result was that all the parties spent three days, the 1st, 2d, and 3d days of January, 1877, in Mr. Smythe's office, going over all the matters in controversy.    The discussion at times was animated.    It was proposed at one time by Gage Williams to go out and secure the assistance of another lawyer, to the end that an action against Hutchinson might be commenced.    It seems, however, that Mr. Smythe presented to them the danger of instituting a lawsuit before the land had been paid for, suggesting that Mr. Witte might foreclose his mortgage.    The result finally reached was this: that Mr. Smythe would, then and there, make out the account of each one of the parties for the amount of the land each one was to get.    A full share was twenty acres, a half share was ten acres; price per acre was $11.    This was done, and also Mr. Smythe made up the accounts, and by this method the exact amount that had been already paid by each one was ascertained, and the balance, if any, of each one was determined, and also that all payments thereafter made should be made to Mr. Smythe.    To this arrangement all not only assented, but subsequently confirmed it.    Each paid the exact balance and interest so ascertained, and as soon as the balance had been fully paid to Mr. Witte, a surveyor, in the presence of all the parties, surveyed and made a plat for the share of each one.    This balance was paid 7th November, 1878.    The survey was made in the last of 1878 or the first of the year 1879.

However, in the year 1880, this action was commenced. In the complaint herein it is sought to have the purchase of the land in question by Hutchinson declared to have been made at, and for the price of, $2,500, as the agent of the parties named in his said deed of trust, but not in the shares therein attempted to be allotted to the persons whose agent in said purchase the said Hutchinson was; that the true intent of the parties, whose agent Hutchinson was in such purchase, was that such land should be divided amongst them according to the amount of the purchase money contributed by each; that such purchase money having been paid by others than Hutchinson, he was not entitled to any share thereof; that Hutchinson having been in possession of more than one hundred acres of said lands, he should be required to account for the rents and profits, as well as to account for all his actings and doings as agent; also, that Hutchinson had conveyed parts of said land to defendants, Abram Brown, Jimmy Wright, and Albert Wiggs, and that such purchasers had, at the time they purchased, a full knowledge of the trusts assumed by Hutchinson, and, therefore, their holdings should be annulled. Hutchinson and the other defendants, who sided with him, denied all these positions, claiming that the purchase from Witte was made by Hutchinson for himself, but that thereafter he had agreed to sell to the parties named in his deed of trust the parcels therein stated, and at the prices therein stated, reserving to himself the balance of said lands; that his conveyances to Abram Brown, Jimmy Wright, and Albert Wiggs were made from that part of said lands he had retained for himself, etc.

The matter came on to be heard before Judge Kershaw upon the testimony, together with the report of Master Sass, and the exceptions thereto. By his decree the Circuit Judge substantially held: that James Hutchinson purchased the land in question as the trustee or agent of himself and the other parties, under the understanding and agreement that the land should be purchased in accordance with the amount of money paid in by each; that the master's finding that some $3,900 was paid by plaintiffs and defendants other than Hutchinson for the purchase of the land, was erroneous, for only $2,961

was paid by all such parties, including Hutchinson; and of
this sum, Hutchinson, and those acting with him, paid $1,134,
while the plaintiffs, and those of the defendants acting with
them, paid the sum of $1,847; that Hutchinson himself paid
of this purchase money $665; that the master having found as
a fact that the intention of Hutchinson and his associates in
this purchase of land was that the land should be allotted to
the said parties to such purchase on the basis of the money
paid by each of said parties, it followed that Hutchinson would
be entitled to his share of the land at the original division, and
would also be entitled to his share of whatever surplus there
remained over; that the master was in error in holding that
the defendants, Abram Brown, Jimmy Wright, and Albert
Wiggs, would not be entitled to hold the lands they had seve-
rally purchased and paid for, on the ground that they were
not parties to the original association of purchasers, for, held
the Circuit Judge, these parties were present with the original
purchasers in the office of Mr. Smythe in January, 1877, when
the whole matter was discussed and arranged, and that such
parties, in accordance with such arrangement, had paid their
purchase money with the full knowledge and concurrence of
the plaintiffs and those who acted with them. And, besides,
in the presence of all the parties, the surveyor had surveyed
and platted the parcels of land that were assigned to said
Brown, Wright, and Wiggs, and for which they held deeds
from Hutchinson; that in accordance with the decision of *Ma-
rines* v. *Goblet*, 31 S. C., 153, it is not allowed that one who has
superior title to land shall stand by while one who has not title
purchases and pays his money for such land, and afterwards
that the holder of the superior title shall defeat the claim to
such land by one who has been misled by his silence and acqui-
escence, under the familiar doctrine of estoppel by conduct.
The Circuit Judge by his decree directed that the titles of these
purchasers, Brown, Wright, and Wiggs, should be confirmed.
He also directed that the heirs of James Hutchinson should
have surveyed and allotted to them the sixty and one-half acres
whereon the buildings are located; that thereafter what re-
mained of the tract of land should be sold, and the proceeds

should first be applied to the payment of all the costs of the action, and whatever remained thereafter should be divided amongst all the parties who had contributed to the payment of the purchase money in the proportion paid by each one.

From this decree the plaintiffs and such of the defendants as acted with them appealed upon the following grounds, because the Circuit Judge erred in holding : 1. That the master finds as a matter of fact that the plaintiffs and defendants paid some $3,900 on account of the purchase money of the land. There is no such finding in the master's report. He does say that the parties other than Hutchinson paid more than the original purchase money—*i. e.*, more than $2,500—which is sustained by the testimony. 2. In finding that Hutchinson paid $665 of the purchase money, whereas the testimony of Hutchinson that he paid $500 is contradicted, and there is not a word of testimony to show that he paid the further sum of $165 of his own money. 3. In finding that Hutchinson and his friends paid $1,134 of the purchase money, and are entitled to share on this basis. 4. In finding with the master that Hutchinson was the agent of the parties, and yet not liable to account to his principals. 5. In assuming arbitrary amounts and figures from the face of the accounts without ordering these accounts vouched or examined. 6. That his honor, Judge Kershaw, erred in this : That whereas he found that the said James Hutchinson was the agent of a company formed for the purchase of the "Shell House plantation," and, therefore, had set up a fictitious and fraudulent defence in setting out and maintaining that he was the sole owner of the land ; in deciding that the said James Hutchinson and his representatives be allowed to come in and attempt to prove payment as an equal participant in the said company. 7. That his honor erred in deciding that in the apportionment of the said land, the said James Hutchinson and his representatives were entitled to an aliquot acreage, including all buildings and improvements, without taking into account the value of the same. 8. That his honor erred in not holding that Abram Brown, Jimmy Wright, and Albert Wiggs, who were not members of the land association or company, and who purchased from Hutchinson after the alleged division of the

land, were privies of Hutchinson, and took only such title as Hutchinson could give.   9. That his honor erred in directing that the said James Hutchinson should not pay costs, it appearing that in all the main issues he had been cast, and that they did not come into the Court of Equity with clean hands.

The first exception assails the finding of fact by the Circuit Judge, that the master was in error in his conclusion, that all the parties, save Hutchinson, had paid more than $3,900 as the purchase money.   It is true, as contended by the appellants, that the master nowhere in his report named the specific amount of $3,900 as paid by parties other than Hutchinson.   No doubt this amount was named by the Circuit Judge as the result of the findings of the master when applied to the testimony, and hence his language was inaccurate.   The amount of the purchase money was $2,500; we mean that was the amount contracted to be paid Mr. Witte for the land.   Only $1,250 was paid in cash, the balance bore interest at ten per cent. from 1st January, 1875, until paid.   This balance was not all paid until 7th November, 1878.   The whole sum paid was $2,954.09, and if the master had found that this sum had been paid by parties other than Hutchinson, it would make no difference in this case whether that sum was called $2,900 or $3,900 by the master.   So while this was an error on the part of the Circuit Judge, it was an innocent error; by this we mean such error in no wise vitiates the decree, as will more fully appear hereinafter.

The next exception cannot be sustained.   Here the appellant assails a finding of fact by the Circuit Judge.   The rule of this court is too firmly established to need argument to sustain it.   Unless such finding has no testimony in its support, or is clearly against the manifest weight of the testimony in the case, such objection is not to be sustained. Here there is testimony to support it.   The defendant Hutchinson testified that he paid $500, at the beginning, of the purchase money.   The circumstances of the case, as testified to by other witnesses, shows that this is true.   There was paid in cash when deed was delivered $1,250, and also $50 for examination of title, thus making $1,300 paid.   Parties other than

Hutchinson only paid $800 of this $1,300. Hence it is demonstrated that Hutchinson testified correctly when he said $500 of his money went into the purchase at the beginning. Then Mr. Smythe's books showed that Hutchinson paid $165 additional on November 7, 1878.

The third exception imputes error to the Circuit Judge in holding that Hutchinson and his friends paid $1,134 of the purchase money. We have just agreed with the Circuit Judge that the testimony establishes that Hutchinson himself paid $665; this leaves $469 to be considered. Did William John Brown pay $143, Peter Brown $110, Albert Wiggs $80, J. J. Wright $106.06, and Abram Brown $30.56? Schedule A attached to plaintiffs' complaint sets out that William John Brown paid $110, that Peter Brown paid $110, that Albert Wiggs paid $250, that J. J. (Jimmy) Wright paid $325, and that Abram Brown paid $220. Now, while it is true this is no proof, yet it shows what the plaintiffs believed in 1881 when they filed their complaint. But what do the proofs show? Abram Brown received twenty acres; whole amount due therefor was $220; paid at beginning $110; cash $60; share of proceeds of crop in 1876, $20.33; 1877, January 10, paid $30.97; making $221.30 paid by him. J. J. Wright received ten acres; whole amount due therefor was $110; paid $55; paid $27.50; 10th January, 1877, $27.50; making $110 paid by him. William John (Brown) received ten acres; whole amount due therefor $110; paid $55; paid $10; share of proceeds of crop in 1875, $18.08; share of proceeds of crop in 1876, $20.33; November 30, 1887, paid $30; making $133.41 paid by him. Peter Brown received ten acres; whole amount due therefor $110; paid $55; paid $10; share of proceeds of crop in 1875, $18.08; share of crop in 1876, $20.33; 1877, January 10, paid $6.95; making $110.06 paid by him. Albert Wiggs paid $80. Thus it is manifest that the Circuit Judge did not err in stating that the friends of James Hutchinson did contribute $469.63 to the payment of the whole "Shell House" tract of land.

It may be asked, how are the above figures ascertained? In answering, it may be remarked that all the parties to the

original purchase were by their own free act before Mr. Smythe for three days in January, 1877, and brought before him all the evidences of payments made up to that time. Not only so, but such parties had him to apportion between the parties entitled thereto the proceeds of the crops made during the years 1875 and 1876, which were sold and applied to the payments, in part, of the debt for the land due to Mr. Witte. Besides, by the agreement of the parties, any balance due by each one of said parties, as their proportions of the debt still remaining unpaid to Mr. Witte, was to be paid, and was so paid, to Mr. Smythe, and, as ought to have been, were duly entered upon the books kept by Mr. Smythe, which entries so made were duly brought before the court at this hearing; and although all parties had the right to assail the correctness of such accounts so kept, yet in no single instance was this attempted. It follows, therefore, there was no error of the Circuit Judge in these particulars.

The next exception alleges that as Hutchinson was found to be the agent of the parties, it was error not to require him to account as such. It seems to us that Hutchinson was held to a stern account. We are not called upon by the respondents to canvass the correctness of the decision of the Circuit Judge and the master in the construction placed by them upon the deed of trust. We may remark in passing, however, that Hutchinson was held bound by recitals in his deed that were inconsistent with direct declarations of his deed to the contrary of such recitals, and that, too, in the face of positive oral and documentary evidence that such recitals were freighted with error as against Hutchinson. That we may be understood correctly in this connection, it may be said that the recitals of the deed of trust, in effect, declared that Hutchinson had made the purchase of the land in question as the agent for himself and his associates, and that he took title to himself in order that the balance of the purchase money might be the more readily secured and paid; which latter, when done, would enable him to convey to the parties really entitled; and yet, in the body of the deed he declared that specific number of acres were to be allotted to the persons therein by name enumerated,

and that the balance of the land was to be his in fee simple. It was testified to by Mr. Smythe that the recitals were erroneous, having been inadvertently copied by a clerk in his office from a deed of kindred import, which had been prepared in his office, and such copy deed was produced at the hearing. The accounts of the parties had been adjusted by the parties themselves while everything was fresh in the memory of each, and while all the parties were alive. To reopen these now, when many of these parties are dead, is asking too much of a Court of Equity; especially in view of the fact, that Hutchinson was only the agent of these parties for a specific object, which has been accomplished. This exception must be overruled.

The appellant complains that the Circuit Judge assumed arbitrary amounts and figures without requiring such accounts vouched and verified. This exception is too general; but we may say in passing, that there is testimony in the case for all the amounts and figures named by the Circuit Judge, except as we have explained in considering the first ground of appeal. Let this exception be overruled.

The sixth exception complains that his honor, the Circuit Judge, after he had found that Hutchinson was the agent of a company formed to purchase the Shell House plantation, and had, therefore, set up a fictitious and fraudulent defence when he claimed the plantation to be his, as the sole owner thereof, still allowed Hutchinson and his representatives to come in and attempt to prove payment as an equal participant in the said company. As we have read the Circuit decree, we fail to discover that the Circuit Judge decided otherwise than by holding that Hutchinson, in such purchase, was the trustee or agent for himself and those he had associated with him in that enterprise. In allowing him and his representatives to prove what payments he had made of such purchase money, he did no more than was specially called for by these plaintiffs; for, in their complaint, they alleged that said Hutchinson was a member of such association, and that he held title as a dry trustee for himself and the other members of the association. The testimony was overwhelming that Hutchin-

son by his precept and example had enabled these plaintiffs and defendants to secure to themselves these homestead holdings. Unlettered though he was, he was a valuable member of society. Nothing but admiration can be felt when we study the conduct of this negro. He seized the vital idea of a permanent, valuable, and happy citizenship, the ownership of one's home, and sought to propagate that idea by its adoption by others than himself. It is greatly to be regretted that so fine a character should have been marred by his taking to himself an advantage in this transaction over his associates. If the proofs established this conclusion, the inevitable effect in a court of conscience would be that this excrescence should be removed. Beyond this result, it is not evident that this court was required to go. Let this exception be overruled.

The appellants, in their seventh exception, assail the Circuit decree for permitting the heirs of Hutchinson to have allotted to them the sixty and one-half acres whereon the dwelling house was located. It seems to us that it is late in the day for these parties to raise the question as to the location of Hutchinson's holding of land. Immediately upon the purchase, we may infer from the conduct of these purchasers, it was agreed that Hutchinson should have these buildings, just as it was agreed that the other parties should be entitled to select for themselves and improve their respective homestead holdings. We do not feel called upon nineteen years after parties have acted for themselves, to substitute our judgment for theirs. They had the right to agree amongst themselves; we will not disturb such agreement. Let this exception be overruled.

The eighth exception relates to so much of the Circuit decree as failed to hold that Abram Brown, Jimmie Wright, and Albert Wiggs, who were not members of the land association, but who purchased from Hutchinson after the alleged division of the lands, were privies of Hutchinson, and, therefore, only took such titles as he could give. As before stated, Judge Kershaw carefully considered the testimony adduced at the hearing, and found as a fact that Abram Brown, Jimmie Wright, and Albert Wiggs were induced to pay for the

lands allotted to them by Hutchinson by the acquiescence therein of the parties to the original purchase. Such parties had the right to speak before these parties parted with their money for these parcels of this land, and they failed to do so. Not only so, but the money paid by these three men was used by the consent or acquiescence of the parties to the original purchase, in the payment of the purchase money due by all to Mr. Witte. The Circuit Judge having so found the facts, and such conclusions not being without testimony to support them, or not being against the manifest weight of the testimony, we will not interfere. Let this exception be overruled.

Lastly, it is complained that the Circuit Judge erred in not requiring Hutchinson to pay the costs of this action. This is an action on the equity side of the court. In such actions much is confided to the chancellor in the matter of costs. We can see no reason in this case why we should vary the rule. Let the exception be overruled.

It is the judgment of this court, that the judgment of the Circuit court be affirmed.